IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAMON P. BREWTON                                                                                       PLAINTIFF

v.                                              CASE NO.         11-2156

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I. Procedural Background

The plaintiff filed her applications for DIB and SSI on February 12, 2008 (T. 136) and February 27, 2008 (T. 143) respectively, alleging an onset date of June 2, 2000 (T. 159), due to plaintiff's visual and mental impairments and leg pain (T. 163).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on May 12, 2009.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 42 years of age and possessed a GED.  The Plaintiff had past relevant work ("PRW") experience as a small parts assembler  (T.

15).

On February 17, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's limited visual acuity, dysthymic disorder, panic disorder, and borderline intellectual functioning did not meet or equal any Appendix 1 listing. T. 11. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but he had nonexertional limitations that precluded work requiring fine visual acuity or transactional interaction with others. T. 12. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the representative occupations such as housekeeping and meat processing. T. 16.

## II. Applicable Law

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion

**A.  Relevant Time Period**

The Plaintiff not only has the burden of proof to establish his disability, but, to be entitled to benefits, Plaintiff must also prove that he was disabled before his insurance expired. *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir.1998). Evidence from outside the insured period can be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Id. at 877. *Cox v. Barnhart* 471 F.3d 902, 907 (C.A.8 (Ark.),2006) In this case the ALJ noted that the Plaintiff had acquired sufficient coverage to remain insured through

December 31, 2006 and that he had to establish his disability prior to that date. (T. 8).

In this case there is only one medical record during the relevant time period and that record dealt with a claim of numbness in the Plaintiff's left hand on December 9, 2006 when he presented to the Good Samaritan Clinic (T. 208). He was diagnosed with left ulnar neuropathy but the clinic noted in May 2007 that the "ulnar neuropathy ceased". (T. 207). No subsequent medical record contains any reference to ulnar neuropathy.  The ALJ was left with the unenviable task of trying to determine if the Plaintiff had a disability prior to the expiration of his insured status notwithstanding the lack of medical evidence.

On February 17, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's limited visual acuity, dysthymic disorder[1], panic disorder, and borderline intellectual functioning did not meet or equal any Appendix 1 listing.  T. 11.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but he had nonexertional limitations that precluded work requiring fine visual acuity or transactional interaction with others. T. 12.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the representative occupations such as housekeeping and meat processing.  T. 16.

The Plaintiff contends that the ALJ A) failed to properly consider his impairments in combination, B) erred in his analysis and credibility determination of his subjective complaints, and C) erred in his RFC determination. (ECF No. 10, p. 2).

**B. Impairments in Combination**

---

[1] Dysthymia is a mild, but chronic, form of depression.  See www.mayoclinic.com

Social Security regulations provide that the Commissioner is to consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of such sufficient severity to be the basis of disability under the law. 20 C.F.R. §§ 404.1523, 416.923; 42 U.S.C. § 423(d)(2)(B). The ALJ must not fragmentize them in evaluating their effects. *Delrosa v. Sullivan,* 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.,* 872 F.2d 810, 812 (8th Cir. 1989)).

The ALJ recognized that disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments . . ." (Tr. 8)(emphasis added). In setting forth the applicable law, the ALJ repeatedly recognized that her analysis of Plaintiff's claims must include consideration of Plaintiff's impairments or combination of impairments (Tr. 16). The ALJ noted at step two that she must consider whether Plaintiff "has a medically determinable impairment that is severe or a combination of impairments that is severe" (Tr. 16)(emphasis added). The ALJ noted at step three that she "must determine whether the claimant's impairment or combination of impairments meets or medically equals" a listed impairment (Tr. 16)(emphasis added). The ALJ noted specifically that in determining Plaintiff's RFC she "must consider all of the claimant's impairments, including impairments that are not severe" (Tr. 17).

The Plaintiff did testify that his back started hurting about five years prior to the hearing, or 2004 (T. 41). This conceivable shows the impairment to exist prior to the expiration of benefits. The Plaintiff's medical records show that in June 2009 his back pain "started 5 years back, worsening for past two years". (T. 311). The Plaintiff first contends that the ALJ disregarded the Plaintiff's testimony about his low back pain however this is not correct. The

-5-

ALJ specifically noted that the Plaintiff "testified that his back had been recently x-rayed, but also admitted that those x-rays showed not problems with his back". (T. 11). Even in 2009 only heat packs and exercise were prescribed by the doctor. There is no proof that any disabling back pain existed prior to 2007.

The Plaintiff did not allege his ulnar neuropathy, GERD symptoms, or OCD as disabling impairments in his disability application (Tr. 163). The fact that the plaintiff did not allege an impairment as a basis for his disability in her application for disability benefits is significant, even if the evidence of the impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). In addition the last medical record concerning the Plaintiffs's ulnar neuropathy shows it resolved in May 2007. (T. 207). As previously noted there is no evidence that any of these conditions predated the expiration of the Plaintiff's insured status. The court does not feel that the ALJ committed any error in her consideration of the Plaintiff's complaints.

**C. Credibility Determination**

The Plaintiff testified on May 12, 2009 that he had not looked for work because his back had "been really sore lately" and that his back started hurting him five years ago but he acknowledged that recent x-rays were negative (T. 41). His mother testified that he was "100 percent blind in one eye" (T. 47) and that he had "stomach problems" (T. 49), "low back problems" (T. 50) and depression (T. 54). In the Disability Report filed February 29, 2008 the Plaintiff claimed visual impairments, depression, anxiety, bipolar and leg pain. (T. 163). It does not appear that the Plaintiff completed a Function Report or a Pain Assessments because the record does not contain these forms.

The ALJ found that the Plaintiff statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment. (T. 13). The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*

The ALJ first notes a lack of ongoing medical care. The Plaintiff contends that his disability began June 2, 2000 (T. 159) but his first medical record is December 9, 2006 for numbness in his left hand (T. 208) which was resolved by May 2007 (T. 207). His first diagnosis of depression was May 2007 (T. 207) and his first complaint for low back pain was April 2009 (T. 313).  For the low back pain the doctor prescribed ibuprofen 400 mg twice daily (T. 313). X-rays were normal (T. 323) and when the Plaintiff saw the doctor again in May 2009 for low back pain the doctor prescribed heat treatment and exercise (T. 312).  In June the doctor again prescribed ibuprofen and exercise (T. 311).

It is inconceivable to the court that had the Plaintiff's back pain been as severe as the Plaintiff alleges that he would not have sought more substantive treatment to relieve the pain. See *Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).  "[W]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486

(8th Cir.1995).

The ALJ also noted that the Plaintiff received no counseling for his depression after the alleged onset date. (T. 14). *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). The ALJ also specifically noted that the Plaintiff had previously filed for disability based on mental impairments, was examined in October 2007, and denied in November 2007, and sought no treatment for his mental condition after the October examination by Dr. Kralik. (T. 13) *See Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir.2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment).

To the extent that Plaintiff's attempts to excuse his failure to pursue more aggressive treatment cannot be wholly excused due to his claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Tate v. Apfel* 167 F.3d 1191, 1197 (C.A.8 (Ark.),1999). The Plaintiff in this case clearly never sought any treatment and was never turned down because of financial hardship.

The court also notes that the Plaintiff did not quit smoking until July 2009 (T. 310). See

*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (noting that despite the claimant's claim that he could not afford medication, the fact that he chose to smoke rather than pay for medications was inconsistent with disabling pain).

      The ALJ also noted that the Plaintiff went without any medication for almost 7 years after his alleged onset and when he was first diagnosed with depression in May 2007 the doctor prescribed Lexapro² 10 mg as needed. (T. 207). In August 2007 the doctor reduced the Plaintiff's dosage to 5 mg.

      So long as the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so," the court should defer to the ALJ's credibility assessment in assessing complaints of disabling pain. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir.2010) (quotation and citation omitted). The court does not find that the ALJ committed any error in discounting the contentions of the Plaintiff concerning his impairments.

**D.  Hypothetical question**

      Of particular concern to the undersigned, however, is the hypothetical question posed to the Vocational Expert. The ALJ found that plaintiff maintained the residual functional capacity to perform a full range of work at all exertional levels but he had nonexertional limitations that precluded work requiring fine visual acuity or transactional interaction with others. T. 12. The ALJ then posed a hypothetical question to the VE which asked if there were any jobs that existed in the national economy that the Plaintiff could perform assuming the RFC as stated. (T. 199). There was no provision in the RFC for Borderline Intellectual Functioning.

---

      ²Lexapro (escitalopram) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs).  See  Www.drugs.com

The ALJ found that the Plaintiff had a severe impairment of Borderline Intellectual Functioning (T. 10).  Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 39-40, 684 (4th ed.1994).  A diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence.  *See Nicola v. Astrue,* 480 F.3d 885, 887 (C.A.8 (Iowa),2007) *citing Hunt v. Massanari*, 250 F.3d 622, 625-26 (8th Cir.2001).

The Government argues that Dr. LaGrand ruled out BIF (ECF No. 11, p. 13) however the court the court does not agree and notes that Dr. LaGrand estimated the Plaintiff's IQ to be between 70-79 and that he did have BIF (T. 260).  Dr. LaGrand notes on Axis II reflect "R/O Borderline Intellectual Functioning" (Id.).  Contrary to the Government's argument the court believes this diagnosis means that BIF possibly exist and that further testing is necessary to rule out that diagnosis.  Dr. Jerry Henderson noted "significant subaverage general intelligence and "BIF versus low average". (T. 271).  Dr. Patricia Walz, after the administration of intelligence testing, found the Plaintiff to have "Probable Borderline Intellectual Functioning". (T. 298).  Regardless the ALJ found that BIF was a severe impairment and failed to consider it in the hypothetical question to the VE

The United States Court of Appeals for the Eighth Circuit has held  "that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert." *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir.1997); *Foreman v. Callahan*, 122 F.3d 24, 26 (8th Cir. 1997).  We have explained: "While borderline intellectual functioning may not rise to the level of a disability by itself, a

claimant is nevertheless entitled to have a vocational expert consider this condition along with [her] other impairments to determine how it impacts upon the claimant's residual functional capacity." Id. at 909 (*citing Pickney*, 96 F.3d at 297). We also have noted it is of no consequence whether the claimant's borderline intellectual functioning pre-dated her application; the vocational expert still must consider it along with the claimant's other impairments. *See Pickney*, 96 F.3d at 297 n. 3; *Grissom v. Barnhart* 416 F.3d 834, 837 (C.A.8 (Ark.),2005)

Therefore, the case should be remanded to allow the ALJ to call a vocational expert to testify as to specific jobs plaintiff can perform, given his intellectual limitations.

### IV.  Conclusion

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this September 14, 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE